**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DENNIS LUIS SERRANO EXPOSITO,

     Petitioner,

v.                                                                                  No. 2:26-cv-00020-DHU-JHR

TODD LYONS, Acting Director Immigration
Customs Enforcement; DORA CASTRO,
Warden of Otero County Processing Center;
JOEL GARCIA, Field Office Director for
Enforcement and Removal Operations;
PAM BONDI, United States Attorney General;
KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security; in their
official capacities,

     Respondents.

**<u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>**

THIS MATTER is before the Court on Petitioner Dennis Luis Serrano Exposito's

Petition for Writ of Habeas Corpus ("Habeas Petition"). Doc. 1. Petitioner alleges that he has

been unlawfully re-detained after being released on his own recognizance, in violation of the

Immigration & Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. *Id.*

at 4. Petitioner asks this Court to order his immediate release from custody. *Id.* at 10. Having

considered the parties' briefs and the relevant law, the Court **GRANTS** Petitioner Dennis Luis

Serrano Exposito's Petition for Writ of Habeas Corpus.

**I.
BACKGROUND**

1.  Petitioner Dennis Luis Serrano Exposito is a native and citizen of Cuba who entered the

    United States without inspection on March 17, 2022. *Id.* at 4.; Doc. 7-2 at 1. Since his

    entry, Petitioner has accrued no criminal history. Doc. 1 at 4; Doc. 7-1 at 3.

2. Two days later, on March 19, 2022, Petitioner was detained by immigration officials. Doc. 7-1 at 2-3.

3. Petitioner was issued a Notice to Appear and placed in removal proceedings. Doc. 7-2. His Notice to Appear charged him as a noncitizen present in the United States who had not been admitted or paroled. *Id.* at 1.

4. That same day, Petitioner was released on an Order of Release on Recognizance. Doc. 7-1 at 3. Since his release, Petitioner has complied with all release requirements. Doc. 1 at 4. Petitioner also attended all his immigration court hearings. *Id.*

5. Following his release, Petitioner established a life in the United States. He lived with his parents and his younger sister in Midland, Texas. Doc. 8 at 9.

6. On March 15, 2023, Petitioner timely filed an Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture. *Id.* at 3.

7. Petitioner was subsequently issued an Employment Authorization Document, better known as a work permit. Doc. 1 at 4. During his release, Petitioner maintained employment and paid taxes. *Id.* His work permit is valid through 2030. Doc. 8 at 3.

8. On June 4, 2025, Petitioner appeared before the El Paso Immigration Court for a master calendar hearing. Doc. 1 at 4. As he was exiting the courtroom, Immigration and Customs Enforcement ("ICE") detained him without explanation. *Id.*

9. Petitioner was transported to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. *Id.*

10. On September 15, 2025, Petitioner filed an Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act with U.S. Citizenship and Immigration Services ("USCIS"). Doc. 8 at 3.

11. On September 17, 2025, Petitioner had his individual hearing before the Otero Immigration Court, Immigration Judge ("IJ") Hugo Martinez. Doc. 7-3. IJ Martinez denied Petitioner's Application for Asylum, Withholding of Removal, for Withholding Under the Convention Against Torture, and entered an Order of Removal. *Id.* at 3, 5. IJ Martinez also declined to consider the pending Application to Register Permanent Residence or Adjust Status before USCIS. Doc. 1 at 4. In explaining his decision to not consider the pending Application to Register Permanent Residence or Adjust Status before USCIS, IJ Martinez found that Petitioner was not an applicant for admission under 8 U.S.C. § 1225(b), and that Petitioner's release on his own recognizance was not parole under 8 C.F.R. § 212.5. Doc. 8 at 3-4.

12. Petitioner timely appealed the Order of Removal to the Board of Immigration Appeals ("BIA"). Doc. 1 at 4. The appeal before the BIA remains pending. *Id.* Accordingly, the Order of Removal is not final. *See* 8 U.S.C. § 1101(47)(B) (noting that an Order of Removal "shall become final upon the earlier of . . . a determination by the [BIA] affirming such order"); *see also* 8 C.F.R § 1241.1(a) ("An order of removal made by the [IJ] at the conclusion of proceedings under Section 240 of the [Immigration and Nationality] Act shall become final . . . [u]pon dismissal of an appeal by the [BIA].").

On January 6, 2026, Petitioner filed a Habeas Petition. Doc. 1. In his Petition, he has been unlawfully re-detained after being released on his own recognizance, in violation of the Immigration & Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. *Id.* at 4. He asks this Court to 1) assume jurisdiction over this matter; 2) issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted; 3) find that Petitioner's detention is unlawful and in violation of the Due Process Clause of the Fifth

Amendment; 4) order Respondents to immediately release him; and 5) grant any other relief that this Court deems just and proper. *Id.* at 10.

On January 9, 2026, the Court entered an Order to Show Cause ordering that the Clerk of the Court serve copies of the Habeas Petition on Respondents, and ordering Respondents to respond to the Habeas Petition within five (5) days of receipt of service. Doc. 3.

On January 20, 2026, Respondents filed their response to the Habeas Petition. Doc. 7. In their response, Respondents do not dispute Petitioner's facts. *See* Doc. 7 at 2. Additionally, despite IJ Martinez's previous finding that Petitioner is not an applicant for admission under § 1225(b), Respondents now argue that Petitioner is appropriately classified as applicant for admission under § 1225(b) pursuant to *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). Respondents assert that 8 U.S.C. § 1226 governs the detention of noncitizens who lawfully entered the United States but are no longer lawfully present, *id.* at 8, whereas § 1225 applies to all noncitizens who enter the country without being admitted, *id.* at 6-7. Respondents further claim that *Matter of Hurtado*, which affirms the Respondents' interpretation, prevents an "'incongruous result' that rewards [noncitizens] who unlawfully enter the United States without inspection and subsequently evade apprehension for a number of years." *Id.* at 10 (citing *Matter of Hurtado*, 29 I&N Dec. at 228). Respondents also argue that the plain language of the INA mandates the detention of all noncitizens present in the United States without having been lawfully admitted and that "past practice does not justify disregard of clear statutory language." *Id.* at 11-13.

On January 25, 2026, Petitioner filed his reply. Doc. 8. In his reply, Petitioner argues that he is not an applicant for admission under § 1225(b) because he was not seeking entry at a border or port of entry when he was re-detained by ICE. *Id.* at 4. He was already in the country. *Id.* He

further argues that *Matter of Hurtado* is plainly contrary to the INA's statutory framework and implementing regulations. *Id.* at 6-8. He also reiterates his argument that was unlawfully re-detained, specifically, without notice and a hearing, after being released on his own recognizance, in violation of the Due Process Clause. *Id.* at 8-12.

On March 16, 2026, Petitioner submitted supplemental authority for this Court's consideration. Doc. 9.

On April 19, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO") asking the Court to order Respondents to immediately release him from immigration custody. Doc. 10 at 4 ¶ III(b).

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the Due Process Clause and INA.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

**III.**
**DISCUSSION**

### A. Petitioner's Re-Detention Without a Pre-Deprivation Hearing Violated His Due Process Rights

Petitioner argues that his re-detention without notice and a hearing after being released on his own recognizance violates the Due Process Clause. Doc. 1 at 4; Doc. 8 at 8-12. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

1. Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to "be gainfully employed" and "be with family." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody on his own recognizance in March 2022. Doc. 7-1 at 3. Petitioner also had a work permit, maintained employment, and paid taxes. Doc. 1 at 4. He lived with his parents and younger sister. Doc. 8 at 9.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, 806 F.Supp.3d 1246, 1252 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by the Office of

Refugee Resettlement demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, No. 2:25-cv-01166-KG-DLM, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

2. A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since March 2022 before being re-detained by ICE, during which time his interest in release grew stronger as he lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. Moreover, requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Further, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

### B. Petitioner's Ongoing Detention Without a Bond Hearing Is Also Unlawful

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. This Court has already considered the statutory and constitutional issues raised by Petitioner with regard to §§ 1225 and 1226.[1] *See Requejo Roman*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos*, 806 F.Supp.3d 1231 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No.

---

[1] The Court acknowledges that the Fifth Circuit and Eight Circuit Court of Appeals have analyzed this issue and reached the opposite conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --F.4th--, 2026 WL 819258 (8th Cir. 2026). The Tenth Circuit Court of Appeals, however, has not yet addressed the issue.

2:25-cv-01311 -DHU-KK (D.N.M. Feb.3, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293-DHU-SCY (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125-DHU-JFR (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175-DHU-LF (D.N.M. Feb. 26, 2026). Because the facts here are not materially different than those this Court analyzed in previous cases, the Court's conclusion is the same. Petitioner, who entered the United States over four years ago, was arrested inside the United States after entering, and was released on his own recognizance, is properly detained pursuant to § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*, --F. Supp. 3d --, 2026 WL 125681.

## C.  Immediate Release Is the Appropriate Remedy

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—Respondents' initial re-detention of Petitioner without due process of law. *See, e.g.*, *E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *See, e.g.*, *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246  (at TRO stage, ordering immediate release of petitioner previously released by the Office of Refugee Resettlement and re-detained without a

pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by the Office of Refugee Resettlement not to be a flight risk or danger); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order and subject him to the same terms as his original Order of Release on Recognizance. Unless and until Petitioner's Order of Removal becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, April 27, 2026, confirming Petitioner's timely release.

Finally, because the Court is granting Petitioner relief in this Order, Petitioner's Motion for TRO (Doc. 10) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE